Our fifth case for this morning is Keith v. Deanne Schaub Joseph Bugney May it please the court, my name is Joseph Bugney, I represent Mrs. Keith. There is really one principal issue before this court, but there are many subsidiary issues given the turn of events of the appellees. I'd like to address first the principal issue before this court, whether or not the restrictions of the Steele-Flatim exception violated Keith's right to present a defense in the trial court. Deanne Schaub So here's my thought about that. Even if we were to go with you on a lot of these preliminary things, even if we were to assume that this isn't really just Strickland ineffectiveness, that the right to present a defense is squarely there, and even if we were to look at Dr. Kula's testimony, there's a huge amount in this record that suggests that Mrs. Keith was perfectly aware of the consequences of her actions at the time she was taking them. She's putting scarves on the girl, she's covering up shoes, she's aware of when the biological mother is going to come, and so you have Dr. Kula's testimony about the nature of the disorders in the record. You have the information about what she was doing, and I have trouble seeing this as the inability to present a defense. There might have been more evidence on the defense that you would have liked to have had, but inability seems to me to mean it's just not there, and I just don't see this record that way. Michael O'Hara The inability is, what do you have to confront that? There's a lot of evidence of Mrs. Keith's subjective awareness in her actions, but those are actually uncorroborated. They all come through the three-hour confession. Deanne Schaub They're from her confession. Michael O'Hara Well, it's uncorroborated from the three-hour confession. Deanne Schaub Well, but it's in there from her confession. That's not the worst of evidence, and Dr. Kula talks about the various things that he's diagnosed and what those things implicate, and so I can see a reasonable Wisconsin court, again, assuming all these preliminary things are out of the way, I can see a reasonable Wisconsin court saying, you know, maybe this isn't the case to go to the mats on the Steele-Flattom exception. There's enough here to have the defense presented. Michael O'Hara And then they would say, we find it harmless. I mean, that would be the finding at that point. Deanne Schaub Or the defense is presented. Now, at the Strickland level, if it was deficient performance not to raise this, maybe they would say, but we don't see any prejudice because there was enough. But just on the, if you're precluded from raising a defense, then the defense isn't there, and it seems to me a reasonable state court could think her defense was there in the case. Michael O'Hara But everything you've named is all evidence against her. Her defense is what would show that she's... Deanne Schaub No, I said Dr. Kula talked about what are people who are bipolar, people who are of limited intellectual capability. She had a long list of things that were depressing. Michael O'Hara Dr. Kula found that she appreciated the wrongfulness of what she was doing and the consequences of what she was doing. Michael O'Hara Clearly, and she withdrew the NGI plea. So she's not going to, you know, be able to satisfy McNaughton, but it goes to her subjective awareness. At that point, what was going on within her mind? And all the things that are listed by Dr. Kula play into a jury. How does the jury perceive this? And it's not just the fact that she has an IQ of 74, or she has PTSD, or she has obsessive compulsive disorder, but how do those influence a normal person? Deanne Schaub But how, and the state of Wisconsin is worried, and it seems to me rationally so, at least our court said so, about somebody in Dr. Kula's position saying, on that day, this was in her mind. And instead, the kind of testimony that can come in is, she's just generically, you know, unable to appreciate the consequences of her actions, or generically doesn't recognize that other human beings have feelings, or, you know, whatever it may be. And if what you really wanted was Dr. Kula to say, on the day in question, she didn't realize that what she was doing was going to result in the death of the child, I think that's a tough road to go on. Eric Green Well, I think that goes to the ultimate issue, and the defense attorney was very clear, backing away from that. But what goes into all those diagnoses, and how do they all affect that person? It's one thing to give the brand of somebody, to say, like, here you go, this is what she has. It's another thing to explain to a jury, this is everything that would influence all of the decisions that she was making, all of the things that she was doing with her parenting. And I use that term not as anyone normally would use, but definitely the corporal abuse. All of that stuff is so horrific, it has to be explained. It has to be explained only through Dr. Kula. That was the only opportunity she had to present a defense. Her whole defense hinged on that. She made that clear from pre-trial, through opening, all the way through. And the trial court meets her halfway. You know, at first, the state's arguing, don't let any of this in. And then the trial court says, okay, you can talk about the diagnoses. And the symptoms, right? Yes, correct, and the symptoms. I think that's actually reversed. The district attorney said, you can let in some of it. You can let in the diagnoses and the symptoms, and that's it. The trial court says, none of it comes in. It's only when the district attorney backs off that they say, okay, now you can get in the axis one, and you can get in the fact that she has OCD. But he doesn't get into how those influence somebody. And that's the key, because that's what cripples him at closing arguments, to be able to argue against this amount of evidence that he was facing. You have a dead child on one side and no explanation on the other. And that's where her defense really hinged, and that's what she had the right to present. It's not enough to say that we have other aspects that we could draw from, that we could say, all right, well, clearly you knew that you were putting socks on CT's feet. But it's how do all of these problems that go within her psychosis, or her psychological makeup, affect her? How does schizoid personality disorder affect her when she's parenting? How did the miscarriage affect her? All of those aspects go into what a reasonable jury would be able to understand and appreciate when judging the reasonableness, whether or not she's subjectively aware. Counsel, in your view, is Rule of Evidence 704B unconstitutional? No. How is it different from what Wisconsin implemented in this case? If you mean, Your Honor, the Steele-Flattom exception, I believe that there is no difference. Well, and you're saying that what Wisconsin did is unconstitutional, and if there's no difference from what 704B provides, then you're saying 704B is unconstitutional. No. I do believe we've upheld it, though. Rule 704B is far more circumscribed than what the Wisconsin courts did here. 704B would allow for... 704B says an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime or of a defense. Yes. Must not state an opinion about mental state. That's... I don't know how one could describe that as far more circumscribed. Well, because here, you couldn't even go up to that limit. If the limit is Rule 704B, then allow him to testify about everything else that goes up to that ultimate issue. What is it that a person with OCD has to deal with in parenting? What is it that everything else you'd have to do with schizoid personality disorder? But you can't express the ultimate issue. That's one thing, and to stop it short of there... I don't know what ultimate issue is or isn't. I only know what the rule says. It says you can't express an opinion. There's no expert opinion on the defendant's mental state. Right? That's what it says. The ultimate... So if your complaint is that there's a lot of her long-term background that didn't come in, you know, her own abuse, you know, other things, I can see how that's not the same thing as how was she feeling on the day or what was her mental state on the day she committed the... various days, actually, that she committed the abuse. But, you know, I just looked again. The trial judge lets in not just labels, not just OCD, but what that means. Dr. Kula is allowed to tell the jury, these are things I think are wrong with her. It wasn't as detailed as you would have liked, but it is there. And trial judges do have the ability to control, you know, this kind of evidence. Clearly, but those limits have to stop when it goes to that's her defense. If her defense is, everything that was going on affected my subjective awareness, and that would actually be the ultimate argument that the counselor would be allowed to make. To say, on that day, an issue, this was what was in her mind. Kula can't testify to that, but her defense attorney needs to have those basic facts elicited from the expert testimony to be able to argue that to the jury. Mr. Bugney, if we find that the Wisconsin State Courts adjudicated this claim on the merits, and by this claim, either through the Sixth Amendment right to defend lens, or the Strickland lens, so that it is due deference under the AEDPA, could we rule in your favor? Yes. How? Sorry. How? If you find that the decision on the merits is to the Fifth Amendment claim, they still haven't addressed the Sixth Amendment claim, so that that would still survive by itself. If you find that the Sixth Amendment claim has been decided upon with the single cite to Morgan, that's an unreasoned decision. That is not something that, even though it would fall under enough for Richter or Williams, that's not enough to give a rational basis for this court to decide whether or not there's been a balance. And that balancing has to be done when it comes to her right to present a defense. Just as it was done in Holmes, just as it was done in Schaefer, sometimes it's not done, the balancing isn't done the way we like it. But it has to be done. And that's what this court did in Hospi-Abramson, that's what it did in Israel v. Munch, and I believe the, sorry, and the last one, Hughes v. Matthews. Okay. Thank you very much. Mr. Witwer. May I please the court? I'm Jake Witwer, Assistant Attorney General with the Wisconsin Department of Justice, representing the state in this case. I have five brief points to supplement the state's arguments. First... So what do we have before us? You're asking us to just ignore everything that happened in the district court and go back to the state court decisions, even though you didn't alert the district court to the proper theory? I sincerely apologize for my error in not alerting the district court to the way in which the claim was actually disposed of by the state courts. It was actually disposed of in the context of ineffective assistance because, and I don't believe that Keith disputes this, the evidentiary issues were decided on state evidentiary grounds only and had to be raised in a post-conviction motion as ineffective assistance of counsel. And that's the way that they were decided on the record by the state courts. I mean, it's troublesome because these are not jurisdictional limitations. These are more in the nature of case processing limitations. And it puts the defense at a great disadvantage if you suddenly change grounds, and we regularly scold people for doing that kind of thing. I realize this is, you know, collateral review and that there's deference. Actually, there would be deference one way or the other anyway, certainly under Strickland, in one's ability to present a defense. As I've been saying, my understanding of that is, did you have a chance to put your defense before the jury at all? It's not quite so much about did you have as much of a chance as you hoped to have. So there's some discretion built in there as well. But is it your feeling that you lose if we go straight to the presentation of the defense grounds? Not at all, Your Honor. Your points are well taken about the right to present a defense and how, in this case, Dr. Kula's testimony was actually quite expansive at trial. The only thing that he was expressly prohibited to comment on was the history of abuse. And to the extent that the parties disagree as to this point, this issue is resolved by the state appellate court's decision, which characterizes this as history of abuse testimony that was excluded. And I believe that that's not an unreasonable determination of fact under the ADPA. So what would the history of abuse have contributed? Well, the state courts determined that it was not relevant, and I think that it was well within their discretion to determine that. And what they did allow was substantial. It was testimony about her mental health problems, her diagnoses, characteristics of those diagnoses, and what that would practically mean for someone like her. So I believe that she was not denied the right to present a defense, even if a constitutional claim had been timely presented, even if the state courts were in an actual position to decide the claim. Mr. Whit, we're under the Richter case and Johnson against Williams. Federal courts now have all kinds of interesting interpretive challenges to try to figure out when state courts have adjudicated federal claims on the merits. So that we look at the cases cited, look at the cases that those cases cited. I'm not sure whether we can go back a third layer. But I'm wondering, the interpretive problems are not unlike the kinds of problems that arise when the question is whether a petitioner fairly presented a federal claim to the state courts. And I'm wondering if you think there's a difference in the interpretive standards we should apply in those two situations. For example, if a petitioner had presented this claim of failure of being prevented from presenting a defense by citing the Morgan case, would that be enough to fairly present the constitutional claim to the state courts? I don't believe so, because I don't believe that the state courts would be put on notice that a constitutional claim was presented. But we're supposed to assume that a citation to Morgan shows that it has been decided, right? That's the nature of federal habeas review, because it's highly deferential to the state courts' decisions. Why should we distinguish between those two standards, those two questions, when we're trying to decipher the relationships between state and federal law? Again, because my understanding is it's the role of the federal courts as a check on the state courts to make sure that they don't make grave constitutional errors on established Supreme Court law. And it seems to me apples and oranges regarding whether a petitioner adequately raises an issue. In order for a state court or any court to rule on an issue, they need to be aware, they need to be apprised of the fact that they need to decide it on constitutional grounds. And here that was not done. If that's the case, if we're trying to understand whether the state courts decided the federal constitutional issue and all they do is cite state evidence law, how do you reconcile your approach to Richter and Williams? It's a highly deferential standard that... So the state wins either way. Well, under the Williams decision that came out recently, if the state courts indicate by citing to a case that decides a constitutional claim, then the constitutional claim has been decided by the court. And I think that that's just a reasonable extension of Harrison v. Richter. As soon as you start saying that decisions, that summary decisions that don't provide any explanation actually are merits-based decisions, then I don't think that you can start distinguishing those cases that decide some issues on the record but not others. Now again, this takes us a bit afar from this case here because I don't even think that Keith disputes that this case was decided within the context of ineffective assistance. On the record, by the Wisconsin Court of Appeals. If there are no further... If I recall correctly, just bear with me a second, but if I recall correctly, your answer in the district court acknowledged that the claims had been exhausted, right? Yes, and they were. The claims in the district court as pled in her petition were exhausted because the claim that was briefed then in the district court, I'm sorry, her claim in her petition was ineffective assistance of counsel. And that was exhausted in the state court. It wasn't right to present a defense. But you never raised any other exhaustion point when counsel comes in and focuses on the right to present a defense. I did not in the district court, and I have to acknowledge that. It was my error. The only thing that would be worse, I think, is if I did not bring this to the court's attention and had the court discover it in the process of deciding the case. No, we appreciate that. Thank you. All right, thank you very much, Mr. Whitworth. Mr. Bugney, I think your time may have expired, but if it did, you can have a minute. Thank you, Your Honor. I would just make two small points. The ineffective assistance of counsel claim was not exhausted. It was not presented to the Wisconsin Supreme Court in the petition for review. And to back up to Judge Hamilton's question about Morgan, in that case, we'd have really just a single citation to a case dealing with an evidentiary rule now trying to supply a constitutional analysis. And that's far afield. Neither Williams nor Richter nor Yiltsch, any case allows for that kind of broad reading of a single citation to a state evidentiary rule, allowing it to pull in with no discussion of the constitutional aspect. If there's no other questions, thank you, Your Honor. All right. Thank you very much. We will take the case under advisement.